## PORTER WILSON v. THE STATE.

### No. 6032.　Decided January 5, 1921.

**Murder—Sufficiency of the Evidence—Circumstantial Evidence—Alibi.**

Where, upon trial of murder and a conviction of that offense, the State relied upon circumstantial evidence alone, but the jury were clearly justified in reaching the conclusion that the defendant was guilty, although he had pleaded an *alibi*, tested by the rules governing circumstantial evidence, there was no reversible error. Following Parish v. State, 85 Texas Crim. Rep., 81.

Appeal from the District Court of Montague. Tried below before the Honorable C. R. Pearman.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*Alvin M. Owsley,* Assistant Attorney General, for the State.—Cited Reese v. State, 220 S. W. Rep., 1096.

MORROW, Judge.—The appeal is from a judgment condemning the appellant to confinement in the penitentiary for a period of five years for the offense of murder.

The deceased, Irvan Darling, while riding in an automobile in company with his brother, nearing his home late at night, was shot from ambush, a number of buckshot discharged from a shotgun taking effect in his back and killing him instantly. To establish appellant's connection with the offense, reliance is had upon circumstantial evidence alone. The deceased and appellant were both young men, residing in the country, and neighbors. Appellant resided with his wife in a house a short distance from that of one Urey, a brother-in-law.

On the night of the homicide, the appellant spent the night at Urey's home, where Urey was present, and according to the testimony of appellant's sister, Urey's wife, appellant did not leave the premises during the night; and according to the testimony of others who were in the house, they had no knowledge of his leaving. According to appellant's theory, he became aware of the death of Darling by overhearing a conversation over the telephone, which was a party line, and according to his own testimony given on the former trial of the case and reproduced upon the present trial, he took no part in the assassination. The appellant and the deceased were enemies resulting from the alleged relations with the deceased and the appellant's wife. On Saturday preceding the homicide, which took place on Sunday night, appellant requested an officer to disarm the deceased. This the officer declined to do in the absence of more specific information touching the possession of the pistol of the deceased, whereupon the appellant stated that something would have to be done; that they could not both live in the same country.

The gun was fired from a point near the road, upon which the deceased was traveling, the assailant being obscured by overhanging limbs. A man's foot-prints were discovered at the point where the assailant stood, and at the same point there was also found a number twelve shotgun cartridge which had been discharged. An automatic pistol was also discovered. The evidence does not identify its owner. The foot-prints were traced by a circuitous route from the point from

which the shot was fired to the dwelling of Urey where the appellant claims to have spent the night. The foot-prints indicated that the man had gone from the house mentioned to the ambush and returned to the dwelling. These foot-prints were, by peculiarities easily discernible, identified with a pair of shoes which, after the homicide, were found in the dwelling mentioned. These shoes, when discovered, were covered by a pile of old shoes and some other material, and their condition was such as to indicate that they had been recently worn.

The circumstances go to support the State's theory that the shoes mentioned were worn by the assailant and hidden by him or under his direction. Appellant disclaims ownership of the shoes or use of them and claims that they were too small for him, he having a very large foot. The evidence shows that upon the former trial he had put the shoes on in the presence of the jury and that they were examined by members of the jury while on his feet, and that they fitted. It was also shown that the feet of Urey were much smaller than those of appellant and that the shoes mentioned would not fit Urey.

On the night of the homicide, the ground was wet, and the shoes, when found, bore evidence of having been worn through by someone passing over wet grass, and some of the seed of which was found on the shoes. On the premises was found a pair of overalls which were also wet, and there was found a shotgun which was of the size to receive the shell which was found at the place from which the shot was fired. At the dwelling there was also found shells of the same size, loaded with buckshot which were of the same weight as those taken from the body of the deceased.

There was also found covered with other cloth a rag that had the color and smell of powder and which bore the appearance of having been used to wipe out a gun which had recently been fired.

We find no authenticated bill of exceptions in the records, and the question upon which we have been called to pass is that of the claim of appellant that the evidence is insufficient to support the verdict.

Tested by the rules governing circumstantial evidence, we are of the opinion that the jury was clearly justified in reaching the conclusion that the assailant of the deceased was one of the persons in the household of Urey, and that the jury was warranted in its finding, which is implied in the verdict, that the appellant was the inmate of the house, who, as disclosed by the shoes and tracks, left and returned. The appellant and deceased were enemies, and the appellant had recently said that they could not dwell together in the same country. His hostility was based upon grievance, real or imagined, which was calculated to engender bitter resentment and hate. The solution of the controverted issue of alibi was for the jury. It was their province to determine, not necessarily from the several circumstances standing alone but from combined forces of all that were proved, beyond a reasonable doubt, the identity of the slayer of Darling. Parish v. State, 85 Texas Criminal Reports, 81, and authorities cited.

We are constrained in view that the incriminating circumstances disclosed by the evidence which we must assume were found true by the jury, were not inconclusive to a degree that authorize this court, on review, to overturn the verdict of the jury, sanctioned as it is, by the approval of the trial judge.

The judgment is affirmed.

*Affirmed.*